IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:17-CR-00178-03 |
| | : | |
| **v.** | : | |
| | : | |
| **JUAN RIVERA MARRERO** | : | Judge Sylvia H. Rambo |

## M E M O R A N D U M

Before the court is Defendant Juan Rivera Marrero's motion for compassionate release. (Doc. 367.) For the reasons set forth below, the motion will be granted.

### I. BACKGROUND

In November 2019, this court sentenced Mr. Marrero to a term of imprisonment of 60 months in connection with his guilty pleas for Possession with Intent to Distribute 500 Grams and More of Cocaine Hydrochloride, in violation of 21 U.S.C. § 846, and Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (Doc. 326.) The charges arose from Mr. Marrero selling cocaine and attempting to conceal from law enforcement $205,000 in drug sales proceeds. (Doc. 309, ¶¶ 6, 8, 30.) According to the parties' written plea agreement, the weight of cocaine attributable to Mr. Marrero was between 3.5 and 5 kilograms, and he was not an organizer or a leader. (Doc. 268, ¶ 14.)

Mr. Marrero is presently incarcerated at Devens Federal Medical Center at Devens, in Ayer, Massachusetts. (Doc. 375, p. 2.) He has served more than 40

months of his 60-month sentence, and he is scheduled to be released on September 9, 2021. (*Id.*; Doc. 384, p. 2; Doc 384-1, p. 1.) Records from the Bureau of Prisons, however, make clear that Mr. Marrero is being referred to home confinement placement to begin in less than four months, on March 12, 2021. (Doc 384-1, p. 3 ("Inmate Rivera Marrero is being referred for a home confinement placement with a recommendation it begin on March 12, 2021, to allow for his supervised reintegration into the community.").)

In August 2020, Mr. Marrero filed a pro se motion for compassionate release requesting a reduction in sentence based on the global COVID-19 pandemic and his various medical conditions that increase his risk of suffering severe illness from the virus. (Doc. 367.) The court appointed as counsel the Office of the Federal Public Defender, which subsequently filed a brief in support of the motion. (Doc. 375.) The government responded in opposition (Doc. 384) and Mr. Marrero replied. (Docs 385.) The matter is thus ripe for review.

## II. STANDARD OF REVIEW

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the sentencing court to reduce his or her term of imprisonment. To do so, the defendant must first request that the Bureau of Prisons file such a motion on his or her behalf, and may only move after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

If the defendant complies with this exhaustion requirement, the court may reduce his or her term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if the court finds that extraordinary and compelling reasons warrant such a reduction, and that the reduction is consistent with the applicable policy statements by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i). Under the Sentencing Commission's relevant policy statement, the court must also find that the defendant is not a danger to the safety of any person or the community as provided in 18 U.S.C. § 3142(g). USSG § 1B1.13.2 Medical conditions that qualify as "extraordinary and compelling reasons" include:

(1) suffering from a serious physical or medical condition,
(2) suffering from a serious functional or cognitive impairment, or
(3) experiencing deteriorating physical or mental health because of the aging process

that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii).

The policy statement also provides that extraordinary and compelling circumstances exist where the defendant is at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment,

whichever is less. *Id.,* § 1B1.13, cmt. n.1(B). Finally, the policy statement contains a catchall provision setting forth that extraordinary and compelling circumstances may exist for a "reason other than, or in combination with" the aforementioned reasons. *Id.*, § 1B1.13, cmt. n.1(D).

### III. DISCUSSION

Mr. Marrero's motion argues that his poor health and the current COVID-19 pandemic present extraordinary and compelling circumstances that justify a reduction in sentence. Mr. Marrero suffers from several serious medical conditions that increase his risk of severe illness from COVID-19. Mr. Marrero is obese. (Doc. 377, p. 132.) He has uncontrolled type 2 diabetes mellitus and is insulin dependent. (*Id.*, pp. 92, 112.) Mr. Marrero also suffers from congestive heart failure, as well as factors that complicate that condition, including severe aortic stenosis. (*Id.*, pp. 107, 112, 141.) He has had a prosthetic heart valve since 2016, and he recently had his pacemaker removed due to infection.[1] (*Id.*, pp. 66, 103, 127.) Mr. Marrero also has a host of additional serious medical issues, including conditions that might further increase his risk of suffering severe illness from the virus, as well as one syndrome that doctors suspect may be linked to the fact that Mr. Marrero was immobilized for

---

[1] Some of Mr. Marrero's medical records indicate that, following the removal of the pacemaker, no follow-up appointment was made due to the COVID-19 pandemic. (Doc. 377, p. 127.)

extended periods when he previously received health care treatment in prison.[2] As a result of Mr. Marrero's medical issues, it appears he has been frequently hospitalized throughout his incarceration. (*See id.*, pp. 24, 26, 150.)

On top of all this, Mr. Marrero's risk of contracting COVID-19 is far from theoretical. Two inmates at Mr. Marrero's institution have died from the virus, and forty-four others have recovered from prior infections. Seven staff members at the prison have also recently tested positive, and six have recovered from prior infections. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/https://www.bop.gov/coronavirus/ (last visited November 20, 2020).

The government concedes, as it must, that Mr. Marrero has exhausted his remedies and demonstrated extraordinary and compelling circumstances that support a reduction in sentence, at least with respect to "some of his medical

---

[2] Specifically, Mr. Marrero suffers from hypertension, which the CDC has recognized might increase the risk of suffering severe illness from the virus. (*Id.*, p. 92.) In addition, Mr. Marrero suffers from rhabdomyolysis, a condition involving muscle death that can be life-threatening. (*Id.*, p. 142.) *See* Cleveland Clinic, Rhabdomyolysis, *available at* https://my.clevelandclinic.org/health/diseases/21184-rhabdomyolysis (last visited November 14, 2020.) His medical records reflect that doctors are unsure about how he acquired the condition, but that a "potential factor" is that he had "been rather immobilized….while receiving his medical care in the prison stating that he lays in bed most of the day and is brought out daily to walk around for a short period of time." (Doc. 377, p. 142) Mr. Marrero is also anemic, and he was considered for a red blood cell transfusion less than three months ago. (*Id.*, pp. 104, 112.) Finally, Mr. Marrero's health records also show that doctors have also diagnosed him with kidney failure, which they described as "progressively worsening." (*Id.*, pp. 1, 7, 142.) Mr. Marrero's most recent medical record, however, notes that his "renal function has returned to normal." (*Id.*, p. 1.) The court will therefore assume for purposes of the motion that Mr. Marrero's kidney issues have been resolved.

conditions." (Doc. 384, p. 12.) Mr. Marrero's obesity, diabetes, and congestive heart failure place him at particular risk of suffering complications from COVID-19, and his hypertension and recent history of kidney failure may further increase that risk. (*See supra*, n2.) Mr. Marrero's institution has struggled to contain the virus, and the multiple deaths it has experienced among prisoners provide a stark reminder of the risks he continues to face. Mr. Marrero has therefore shown extraordinary and compelling circumstances justifying compassionate release.

Despite recognizing that this case presents extraordinary and compelling circumstances supporting a reduction in sentence, the government argues that Mr. Marrero should not be released early because he has failed to demonstrate that he is not a danger to others and that a reduction in sentence is warranted in light of the Section 3553(a) factors. The court disagrees with both arguments.

Mr. Marrero's offense conduct was non-violent. (*See* Doc. 309, ¶¶ 6, 8, 30.) He does not have an extensive criminal history; he has never been charged with a violent crime; and he has served two-thirds of his total sentence in this case, apparently without disciplinary issue. (*See id.*, ¶¶ 51, 52.) Mr. Marrero is also a relatively sick man. He suffers from numerous serious medical conditions, and his recent medical records reflect frequent hospitalizations due to infections and other health concerns. Though ill people can and do commit crimes, and while the court recognizes that Mr. Marrero was not in perfect health when he committed the crimes

for which he is presently incarcerated, his numerous serious health issues of late further decrease the likelihood that he will pose any danger to others. Additionally, Mr. Marrero is scheduled to be released to home confinement beginning in less than four months regardless of the outcome of this motion. In ordering his early release, this court will impose a term of supervised release with the condition of home confinement for those months, which will continue for six additional months until Mr. Marrero's presently-scheduled September 2021 release date. After that, Mr. Marrero will serve an additional five years of supervised release in accordance with his initial sentence. All told, these restrictions will ensure that Mr. Marrero serves the full length of his sentence, with the only practical difference being the location of his confinement for the next four months. Mr. Marrero's release will not allow him to walk the streets any sooner than he would have otherwise. The court therefore finds that Mr. Marrero does not pose a danger to other persons or the community.[3]

The Section 3553 factors also support reducing Mr. Marrero's sentence. Under 18 U.S.C. § 3553(a), the court considers multiple factors, including, among other things, (1) "the nature and circumstances of the offense and the history and

---

[3] The government also expresses reasonable concern regarding Mr. Marrero's history of substance abuse, which was among the motivating factors for his crime. Once again though, Mr. Marrero is scheduled to be released to home confinement in just four months, and it is difficult understand what the government expects him to accomplish during that time that he has not already accomplished during his first forty months incarcerated. Importantly, Mr. Marrero also appears to have a drug-free home and healthy family support system given that his wife practices sobriety. In light of these considerations and the restrictions and supervision that will be imposed, the court finds that Mr. Marrero's history of substance abuse does not preclude his compassionate release.

characteristics of the defendant"; (2) "the need for the sentence imposed ... to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed ... to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

The nature and circumstances of Mr. Marrero's offenses were serious and involved large quantities of cocaine. His offense conduct was non-violent, however, and it was stipulated by the government that he was neither a leader nor an organizer. (Doc. 268, ¶ 14.) Importantly, Mr. Marrero has also served over forty months in prison, approximately two-thirds of his total sentence, to atone for his crime. That period of time is sufficient, in light of the above-described circumstances of Mr. Marrero's incarceration and the restrictions that will be imposed upon his release, to provide just punishment and adequate deterrence and promote respect for the rule of law. Though Mr. Marrero's compassionate release will result in him serving less than the mandatory minimum sentence for his crime, the undeniable fact remains that he is scheduled to be released in just a few months anyway, and that his continued incarceration threatens his life. Considering these unique circumstances, as well as Mr. Marrero's good behavior in prison and non-violent history, releasing him to the strict supervision of the Probation Department, on the condition of home confinement, is just and necessary and does not undermine the respect for the law.

Once again, the practical effect of the court's decision is modest; it allows Mr. Marrero serve the last four months he was scheduled to be in BOP custody from his home, an environment that undoubtedly allows him to better protect himself from COVID-19 and mitigate against his heightened risk from the virus.[4]

## IV. CONCLUSION

For the reasons outlined above, Defendant Juan Rivera Marrero's motion for compassionate release will be granted. An appropriate order shall follow.

> */s/ Sylvia H. Rambo*
> SYLVIA H. RAMBO
> United States District Judge

Dated: November 20, 2020

---

[4] The government contends that Mr. Marrero has not shown that he would be at less risk from the virus outside prison, since his release proposal fails to specify "the number of individuals that Marrero would regularly encounter while at his residence and at work." (Doc. 384, p. 17-18.) This argument is difficult to square with the government's concession that extraordinary and compelling circumstances exist to support Mr. Marrero's release. In any event, the details the government insists upon are far from necessary, as it is hardly a controversial proposition that incarcerated persons generally face an increased risk of contracting the virus, *see e.g.*, *United States v. Somerville*, 463 F. Supp. 3d 585, 598 (W.D. Pa. 2020), and Mr. Marrero's institution in particular has already experienced two inmate deaths, multiple recent staff member infections, and dozens of prior inmate infections. The court comfortably concludes that supervised release with the condition of home confinement will allow Mr. Marrero to better manage his risks of contracting the virus.